IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SCOTT VINCE,

                         Plaintiff,                                    OPINION and ORDER

    v.                                                         08-cv-591-slc

ROCK COUNTY WISCONSIN;

TOM NIMAN, in his individual capacity, and as Rock
County district attorney investigator;

ROCK COUNTY DISTRICT ATTORNEY'S OFFICE;

RAYMOND JABLONSKI, in his individual and as Rock
County assistant district attorney;

CITY OF BELOIT, WISCONSIN; and

LORENZO HENDERSON, in his individual capacity, and
as city of Beloit police officer,

                         Defendants.

---

      This is a civil action brought under 42 U.S.C. § 1983 for monetary relief.  Plaintiff, a confidential informant, alleges that defendants violated his constitutional rights by exposing him to an unnecessary risk and failing to protect him when they placed him in the general population of the Rock County jail.  In addition, plaintiff alleges that the institutional defendants, the City of Beloit and Rock County, are liable for "failures of policy" that allow these constitutional violations to occur.

      Before the court is the motion to dismiss filed by defendants Raymond Jablonski, an assistant district attorney, and the Rock County District Attorney's Office (hereafter RCDAO).[1]  Plaintiff opposes the motion to dismiss on the grounds that (1) defendant Jablonski was aware of the known risk to plaintiff's safety posed by placing him in the general population section of the Rock County detention center and (2) RCDAO has a policy of not communicating "critical

---

[1] Although the complaint's caption  refers to the "Rock County Assistant District Attorney Office," I assume that this was a misprint on plaintiff's part because the body of the complaint refers to the "Rock County District Attorney's Office."

information" regarding informants to the Beloit Police Department and the Rock County detention center.  I am granting defendants' motion because plaintiff fails to state a claim against defendant Jablonski and defendant RCDAO.

In his complaint, plaintiff alleges the following facts:

## ALLEGATIONS OF FACT

Plaintiff Scott Vince is a resident of Beloit, Wisconsin and was a confidential informant for the Beloit Police Department and the RCDAO.

At all times relevant to the complaint, defendant Tom Niman and Rocky County Assistant District Attorney (ADA) Raymond Jablonski were employees of Rock County and the RCDAO.  At all times relevant to this complaint, defendant Lorenzo Henderson was a police officer for the City of Beloit, Wisconsin.

Defendants Rock County and City of Beloit are local governments in the state of Wisconsin.

On or about August 23, 2005, defendants RCDAO, Niman and Jablonski informed officials at the Rock County detention center that plaintiff was working as a confidential informant for a narcotics investigation and detection program called SLANT.[2]  Defendants RCDAO, Niman and ADA Jablonski further told the officials that plaintiff should be segregated from the general prison population and held in an administrative segregation section of the detention center because he had testified against several inmates who were being held at the

---

[2] "SLANT" is the State Line Area Narcotics Team, a multi-agency drug task force.

detention center. If plaintiff was not placed in segregation, then his safety and life would be jeopardized.

After this warning, plaintiff's status as a member of the "witness protection program" was, or should have been, entered into the records kept at the Rock County detention center.

At all time relevant to this case, the Rock County detention center used a program called "jail manager." With this program, officials at the detention center could create an "enemies list" that identified inmates who were risks to each other and needed to be separated. Plaintiff alleges that an "enemies list" was, or should have been, created for him no later than August 23, 2005.

On October 6, 2005, plaintiff was arrested by an officer of the Beloit Police Department on suspicion of possession of cocaine and paraphernalia. Plaintiff was transmitted to the Rock County Detention center by defendant Lorenzo Henderson. Defendant Henderson filled out a form requesting transmission that was sent with plaintiff. The form contains a section where an officer can include information such as the need to place a specific inmate in segregation because his safety would be jeopardized in general population. Defendant Henderson made no entry that plaintiff was a member of the witness protection program or in need of segregation.[3] When plaintiff arrived at the Rock County detention center, he was placed in general population because there was no record that he needed to be placed in segregation or that he was a protected witness.

---

[3] Note that plaintiff does not allege that defendant Henderson personally was aware of plaintiff's status or his need to be segregated.

3

On October 7, 2005,[4] plaintiff was beaten and severely injured by another inmate.

Defendant Beloit Police Department, RCDAO and the Rock County Detention center have a policy "to not require and coordinate the sharing of critical information" regarding detainees and inmates.

## ANALYSIS

When considering a motion to dismiss, the court must accept as true all well-pleaded factual allegations in the complaint, drawing all reasonable inferences in favor of the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 72 (1984); *Yeksigian v. Nappi*, 900 F.2d 101, 102 (7th Cir. 1990). When a court decides a motion to dismiss under Rule 12(b)(6), it can consider only the complaint in its analysis. *Palda v. General Dynamics Corp.*, 47 F.3d 872, 875 (7th Cir. 1995); *Hill v. Trustees of Indiana University*, 537 F.2d 248, 251 (7th Cir. 1976). "Dismissal under Rule 12(b)(6) is reserved for complaints that do not state legally cognizable claims, including the situation in which the plaintiff pleads himself out of court by making allegations sufficient to defeat the suit." *Vincent v. City Colleges of Chicago*, 485 F.3d 919, 924 (7th Cir. 2007).

### A.  Failure to Protect

The Eighth Amendment gives prisoners a right to remain safe from  assaults by other inmates. *Langston v. Peters*, 100 F.3d 1235, 1237 (7th Cir. 1996). Pre-trial detainees whose claims arise under the Fourteenth Amendment also receive the same protections and their claims are governed by the same standards as an Eighth Amendment claim. *Mayoral v. Sheahan*, 245

---

[4]Although plaintiff's complaint states the year as 2008, it  must have been 2005.

F.3d 934, 938 (7th Cir. 2001).  "[P]rison officials have a duty . . . to protect prisoners  from

violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U. S. 825 (1994).

> Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, [and] having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course.

*Farmer*, 511 U.S. at 833.

To state an Eighth Amendment failure to protect claim, a pre-trial detainee must allege

that (1) he faced a "substantial risk of serious harm" and (2) the officials identified acted with

"deliberate indifference" to that risk.  *Id*. at 834; *Brown v. Budz,* 398 F.3d 904, 909 (7th Cir.

2005).  Plaintiff alleges that defendant ADA Jablonski informed officials at the detention center

that plaintiff faced a serious risk of harm if they left plaintiff in the center's general population.

This is enough to satisfy the first prong of plaintiff's failure to protect claim.  *Brown*, 398 F.3d

at 911 (citing *Weiss v. Cooley*, 230 F.3d 1032, 1033 (7th Cir. 2000)) ("heightened risk" of assault

from particular inmate satisfies requirement that there be "substantial risk of serious harm").

As for the second prong, a prison official may be held liable under the Eighth Amendment

"only if he knows that inmates face a substantial risk of serious harm and *disregards* that risk by

failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847 (emphasis added).  "A

prisoner normally proves actual knowledge of impending harm by showing that he complained

to prison officials about a specific threat to his safety." *McGill v. Duckworth*, 944 F.3d 344, 349

(7th Cir. 1991).

Here, plaintiff alleges that ADA Jablonski informed officials at the detention center on

or before August 23, 2005 that plaintiff was an informant who would be at risk in the general

population.  About six weeks later, on October 6, 2005, plaintiff was arrested and taken to the detention center.  Based on these allegations, it is not reasonable to infer that ADA Jablonski disregarded any risk to plaintiff's safety.  Even if I infer that ADA Jablonski knew or soon learned of plaintiff's arrest, I cannot reasonably infer that ADA Jablonski was aware–or that he should have been aware–of any need to repeat his recent warning in order to insure plaintiff's safety while detained.  The complaint does not allege that ADA Jablonski disregarded risks to plaintiff's safety; to the contrary, the complaint indicates that ADA Jablonski was aware of the risk and had made it known to those in a position to protect against it.

Plaintiff argues that a "letter" written by ADA Jablonski suggests that he knew officials at the detention center would not adhere to Jablonski's warnings and therefore he had a duty to go even further to insure plaintiff's safety. Plaintiff's complaint says nothing about a letter written by ADA Jablonski from which it could be inferred that  ADA Jablonski was aware that his warnings had fallen on deaf ears.  Therefore, based on plaintiff's factual allegations, it is not plausible to infer that  ADA Jablonski knowingly disregarded a risk to plaintiff's safety.  Because plaintiff's complaint contains no allegations that  ADA Jablonski disregarded a serious risk to plaintiff's safety, I am granting defendant Jablonski's motion to dismiss.

### B.  Liability of the District Attorney's Office

Pursuant to Fed. R. Civ. P. 17(b), state law determines whether an entity has the capacity to be sued.  Under Wisconsin law, municipalities may be sued, *see* Wis. Stat. § 62.25, but individual agencies and departments, such as a district attorney's office, may not.   *See Grow v. City of Milwaukee*, 84 F. Supp. 2d 990, 995-96 (E.D. Wis. 2000), criticized on other grounds in

6

*Driebel v. City of Milwaukee*, 298 F.3d 622, 641-42 (7ᵗʰ Cir. 2002); *Buchanan v. City of Kenosha*, 57 F. Supp. 2d 675, 678 (E.D. Wis. 1999); *Abraham v. Piechowski*, 13 F. Supp. 2d 870, 879-80 (E.D. Wis. 1998).  The juristic capacity of a Wisconsin District Attorney's Office was addressed directly in *Buchanan*:

> Wisconsin statutes do refer to "district attorney," and § 978.05 enumerates the duties of the district attorney. These include prosecuting criminal actions, Wis. Stat. § 978.05(1); state forfeiture actions, county traffic actions and certain county ordinance violations, Wis. Stat. § 978.05(2); and instituting or appearing in specified civil actions and special proceedings, Wis. Stat. § 978.05(6). However, these statutes authorize the district attorney to prosecute actions on behalf of the state or county to enforce the laws of these governmental units. No statute authorizes a district attorney as an entity to bring a lawsuit on its own behalf or to be sued as an entity separate from the individual holding the office or the governmental unit of which the district attorney is part.

57 F. Supp. 2d at 678 (emphasis added).

This means that a civil rights litigant seeking redress for wrongs allegedly committed by within a district attorney's office either must sue the attorney who is alleged to have violated his rights–assuming the attorney is not immune from suit–or must sue the governmental unit that has authority over the district attorney's office.

As noted in the previous section, plaintiff named as a defendant the assistant district attorney who allegedly violated his rights but failed to state an actionable claim against him. Plaintiff already is suing Rock County, the governmental unit that might have authority over the district attorney's office.  But the parties dispute whether the district attorney's office is classified properly as a county office or a state office.  If it is a state office, then theoretically plaintiff could bring the state into this lawsuit; as defendant points out, however, plaintiff may well be

barred from suing the state for monetary damages, which is the relief sought.  In any event, plaintiff cannot proceed against the RCDAO.


ORDER

It is ORDERED that the motion to dismiss by defendants' Raymond L. Jablonski and Rock County District Attorney's Office is GRANTED and plaintiff Scot Vince's complaint against these defendants is DISMISSED.


Entered this 1st day of June, 2009.


BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge