IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SCOT VINCE,

                    Plaintiff,

  v.

ROCK COUNTY, WISCONSIN, TOM NIMAN,
CITY OF BELOIT, WISCONSIN and
LORENZO HENDERSON,

                    Defendants.

OPINION AND ORDER

08-cv-591-slc

---

      In this action for monetary relief brought under 42 U.S.C. § 1983, plaintiff Scot Vince alleges that the defendants violated his Eighth and Fourteenth Amendment rights by failing to protect him from assault when they placed him in general population at the Rock County Jail. Because plaintiff was a pretrial detainee, his claims arise under the Due Process Clause of Fourteenth Amendment, which provides protection analogous to that provided by the Eighth Amendment. *See Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008). Before the court are motions for summary judgment filed by the two groups of defendants. *See* dkts. 40 and 45.

      I am granting both motions. Vince has presented no evidence that either of the personal defendants had a duty to protect Vince once he was booked into the jail, or that either of them knew of, then disregarded a substantial risk that Vince actually faced harm if housed in the jail's general population. Vince has presented no evidence that either of the municipal defendants had or used an unconstitutional policy or custom regarding informant safety at the jail, or that either entity failed adequately to train its employees.

From the parties' pleadings and the properly submitted proposed findings of fact, I find the following facts to be material and undisputed:

UNDISPUTED FACTS

Rock County and the City of Beloit are municipalities located within the Western District of Wisconsin. Lorenzo Henderson is a police officer with the City of Beloit. Tom Niman is employed by Rock County as an investigator assigned to the district attorney's office.

Plaintiff Scot Vince has been a confidential informant for Rock County law enforcement agencies since 1997 or 1998. During that time, Vince has testified a half-dozen times for Beloit Police Detective McMahon, an agent on the local drug task force.

On August 25, 2005, Vince was arrested by a sheriff's deputy. Just prior to being taken into custody, Vince spoke with Investigator Niman on the telephone and told Niman that he (Vince) was about to be arrested. Niman told Vince that he would do what was needed to ensure Vince's safety in the Rock County Jail. Upon arriving at the jail, Vince told Sergeant Laurie Sprecher that he was a confidential informant. Vince ended up housed in administrative segregation, out of the general population. Vince later was released from custody.

About six weeks later, early in the morning of October 6, 2005, Vince was arrested by Officer Henderson on an outstanding warrant for bail jumping. Officer Henderson did not know Vince before this arrest. Officer Henderson transported Vince to the Beloit Police Department. Officer Henderson searched Vince and found a crack pipe and what appeared to be a rock of crack cocaine. He asked Vince "[i]f he bought this for McMahon too?" (The parties dispute whether Vince ever told Officer Henderson he was an informant) Investigator Niman did not participate in this arrest.

After transporting Vince to the Rock County jail, Officer Henderson filled out a Rock County jail Temporary Detention Form.  He did not note on the form that Vince was a confidential informant.  Officer Henderson turned Vince over to jail staff and left.

Jail staff then began the process of assigning Vince to a unit in the jail.  The jail's standard operating procedure SOP 6.150 directed that the jail objectively classify inmates according to their needs and the risks they present while jailed.[1]  (Plaintiff points out that SOP 6.150 makes no reference to an inmate's status as a confidential informant, although it does account for the "special circumstance" of "no contact with other inmates" at § III.B.4.)  In 2005, the booking process at Rock County Jail included use of a computer program called "Jail Manager" to assist in classifying inmates.[2]  Jail Manager kept a record of an inmate's prior incarcerations in the jail and compiled an "enemies list" for each inmate so as to avoid conflicts between newly-admitted inmates.  (Vince disputes the efficacy of the enemies list because the term "enemy" is not a defined term of art).  Vince's file in Jail Manager contained a list of people from whom jail officials believed Vince should be separated.

The information stored in Jail Manager was available to jail officials each time an individual was booked into the jail.  A person's file in Jail Manager did not include his status as a confidential informant.  The jail based housing decisions on each inmate's enemies' list in Jail Manager because many inmates claimed to be informants and thus required special housing

---

[1] Vince disputes most of defendants' proposed facts regarding SOP 6.150.  There is a difference between finding as a fact what the policy states, which cannot be genuinely disputed, and finding as a fact whether the policy was effective or was followed, points that are capable of being put into dispute.

[2] Rock County later replaced Jail Manager with a different program.

consideration. Jail staff were allowed not to assign informants to administrative segregation if there was another place in the jail to house them where none of their listed enemies were housed.

As part of Vince's booking process on October 6, 2005, a jailor screened Vince to determine whether he was at risk of being injured by other inmates. Initially, Vince was assigned to be housed in the D-3 unit. However, Jail Manager detected a known enemy of Vince's in D-3, so Vince was re-assigned to the D-1 unit where no known enemies were incarcerated. Perhaps it goes without saying that Investigator Niman did not participate in this review or assignment.

Vince was in the jail booking area for about an hour. While there, he told the jailors that he was a confidential informant and asked one of them, Officer Bruce Danielson, to place him in the segregation unit. Officer Danielson responded that they had "checked the list" and no individuals that were identified as enemies of Vince were in Unit D-1, so that's where he had been assigned. Vince replied that the list didn't include everyone against whom Vince had previously testified.

Vince was taken to the D-1 unit sometime between 4:00 am and 7:00 am. Upon his arrival, a jailor announced over the loud speaker "Vince, that's your cell over there." The other inmates on the unit, who were confined to their own cells at that time, began chanting "beat him!" and announced that they would kill Vince. Vince twice attempted to tell jailors that he was being threatened by the other inmates in the unit and needed to be moved before the cell doors were opened in the morning. Nonetheless, Vince was not moved.

On October 6, 2005, after 7:00 am, when the cell doors opened for the day, an inmate named James Reed attacked and injured Vince. Vince did not know Reed personally or by reputation, and Reed was not on Vince's "enemies list." After the attack, Vince was interviewed

4

by jail personnel, who then granted his request to place him in administrative segregation until he was moved to the Huber (work release) Unit.

## ANALYSIS

**I. Summary Judgment Standard**

Under Fed. R. Civ. P. 56, summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In ruling on a motion for summary judgment, the admissible evidence presented by the nonmoving party must be believed and all reasonable inferences must be drawn in the nonmovant's favor. However, a party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires a trial. *Hunter v. Amin*, 583 F.3d 486, 489 (7th Cir. 2009); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The applicable substantive law will dictate which facts are material. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). The court's function in a summary judgment motion is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).

**II. The Individual Defendants**

I note at the outset that the only two individual defendants named in the complaint are physically and legally distant from the beating that led to this lawsuit, so, applying the relevant case law to Investigator Niman and Officer Henderson is a square peg/round hole exercise. Vince has not sued any of the jailors who assigned him to Unit D-1, who declined his request to be

5

moved to administrative segregation or who may have heard the other inmates chanting that they were going to beat him. To the same effect, it is unclear on this record why Vince would blame Investigator Niman for not ensuring that Vince's informant status was of record with the jail instead of blaming Detective McMahon, the drug task force agent for whom Vince regularly worked. Vince is represented by a lawyer, so these must have been conscious tactical choices, but they are puzzling.³

The Due Process clause of the Fourteenth Amendment requires jail officials to take reasonable measures to guarantee the safety of pretrial detainees. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). This includes a duty to protect inmates from violent assaults at the hands of fellow prisoners. *Klebanowski v. Sheahan*, 540 F.3d at 637. "An official violates that duty only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Klebanowski*, 540 F.3d at 637, quoting *Farmer*, 511 U.S. at 847. To establish the deliberate indifference of individual defendants, a detainee must show that they acted with the equivalent of criminal recklessness, which in this context means that they were actually aware of a substantial risk of harm to the detainee's safety, yet failed to take appropriate steps to protect him from the specific danger. *Id.* at 639. Meeting this standard requires the detainee to show that he provided the officers with "more than general allegations of fear or the need to be removed." A detainee's speculation regarding threats he might face, as opposed to notice of

---

³ It is much too late for Vince to amend his complaint to include any of these defendants. Once this order granting summary judgment is entered, this lawsuit is over.

a specific threat to the detainee falls below the required notice an officer must have for liability to attach for deliberate indifference. *Id.* at 639-40.

In *Klebanowski*, the plaintiff, a pretrial detainee, reported to two sets of jailors that he had been beaten by three other inmates (resulting in medical treatment and stitches to plaintiff) and that he wanted a transfer because he feared for his life. Plaintiff did not disclose to his jailors that the other inmates were gang members who had targeted plaintiff because he was not, or that his attackers had actually threatened to beat him again in the future. The jailors did not act on plaintiff's report and the next day he was repeatedly shanked by the same three inmates in a more violent second attack. Plaintiff sued the jailors for failing to protect him but lost on summary judgment because the jailors did not have notice of a specific threat to plaintiff: "there was nothing leading the officers to believe that [plaintiff] himself was not speculating regarding the threat he faced out of fear based on the first attack he suffered." *Id.* at 640.

### A. Investigator Tom Niman

Investigator Niman is completely absent from the causal loop. Prior to one of Vince's *previous* jail stays, six weeks earlier in August 2005, Niman promised to call the jail to report Vince's status as an informant. Upon his arrival for booking, Vince personally told the jailor that he was an informant. Vince got assigned to administrative segregation, although it is not clear whether this was a result of a call from Investigator Niman or Vince's self-report of his status. In any event, it is undisputed that Investigator Niman was not involved in and did not know about Vince's arrest and booking at the jail on October 6, 2005.

So why is Investigator Niman a defendant in this lawsuit? Vince contends that Niman should have somehow "memorialized" Vince's informant status with the jail in August so that

7

Vince would have avoided the risk of being placed in general population during later arrests, as happened. *Plt.'s Repl. Br.*, dkt. 60, at 2. But Niman didn't work for or at the jail, he worked for the district attorney. Niman would have no authority or mechanism actually to do this and no way to know one way or the other if the jail had done this in August, 2005 after Niman called. Finally, as a practical matter, why would it have been Investigator Niman's job to grease the skids for Detective McMahon's informant? Why wasn't Detective McMahon responsible for keeping his own informants safe and happy?

Vince's claim against Investigator Niman drifts weightlessly, unmoored to fact or law. Investigator Niman was not Vince's jailor, he had not duty to Vince in this matter, and it is impossible to find that he disregarded any threat of harm to Vince in the jail's general population in October because Investigator Niman was completely uninvolved in and unaware of those events. Investigator Niman is entitled to summary judgment.

### B.  Officer Lorenzo Henderson

Officer Henderson's role in these events was more proximate to Vince's beat-down at the jail but equally lacking in causation or responsibility. Vince contends that Henderson was deliberately indifferent to his status as an informant because he failed to put Vince's informant status on a form and failed orally to inform jail officials. Let's assume, *arguendo*, that Vince had in fact announced to Officer Henderson during their interaction that Vince was Detective McMahon's informant. This still would have made Officer Henderson's knowledge of Vince's status nothing more than uncorroborated hearsay; thus, Officer Henderson would have had no

basis to vouch for the truth of Vince's claim and no reason to lobby the jail to house Vince in segregation.[4]

Even if we assume, *arguendo*, that Officer Henderson should have written on the jail's booking form that Henderson was claiming to be an informant, his failure to do so was immaterial. The jailors learned that Vince was claiming to be an informant because Vince told them himself. At that point, it was up to the jailors to decide whether and how to protect Vince from harm while he was jailed. The jailors did this by consulting Vince's enemies list and assigning him to an enemy-free unit. Whether this was sufficient has nothing to do with Officer Henderson. Officer Henderson had no knowledge of any actual, specific threat of harm to Vince in the jail and he was not in a position to have done anything more about it than Vince already had done for himself. As with Investigator Niman, there is a causal break here between the outside officer and the jailors. Under the legal standard of *Farmer*, 511 U.S. at 847, and *Klebanowski*, 540 F.3d at 637, no reasonable jury could find that Officer Henderson had enough information about Vince or the risks he might face, or had enough responsibility over the jail's housing decisions to be found liable on Vince's constitutional claim. Officer Henderson is entitled to summary judgment.

## III. The Municipal Defendants

Municipal entities may be sued under § 1983 when an unconstitutional action implements or executes a policy statement, ordinance, regulation or decision officially adopted

---

[4] Officer Henderson explained that he didn't necessarily doubt Vince's claim to be an informant but he was "indifferent" to it in the sense that he had no personal knowledge of it and had no basis to determine how the jail should handle Vince. Henderson Deposition Excerpt, dkt.56, Exh. 2, at 7.

or promulgated by that body's officers. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978). Further, some actions by municipal officials might be so permanent and well-settled that they may be sued for unconstitutional customs or practices that are not officially adopted. *Id.* at 690-91. However, municipal bodies cannot be liable under theories of respondeat superior and there must be more than just an employer-employee relationship to impute liability. *Id.* at 692-93. *See also Klebanowski*, 540 F.3d at 637.

While an employee's liability alone does not give rise to a municipality's liability under § 1983, there are limited circumstances in which a failure to train employees may impute liability to a municipal body. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387-88 (1989). Failure to train is a valid claim only when deliberate indifference is shown to the rights of persons with whom the officers of the governmental entity came into contact. *Id.* at 388-89. For liability to attach, a plaintiff must show that the governmental defendant's failure to train "actually caused" the indifference to plaintiff's needs. *Id.* at 391.

### A. City of Beloit

Vince contends that the City of Beloit is liable to him because Officer Henderson, as a police training officer, "inculcates the policies and practices of the Beloit P.D." *Plt.'s Repl. Br.*, dkt. 60, at 2. It is not clear whether Vince is arguing that defendant Beloit failed to train its officers or had an unconstitutional policy or custom. Regardless, the facts fail to establish either theory, which apparently are tied to Officer Henderson's personal acts and omissions toward Vince. As noted in the previous section, Officer Henderson did not violate Vince's constitutional rights. Even assuming, *arguendo*, that Officer Henderson could be held liable personally liable in this situation, the City of Beloit could not. A municipality cannot be held

10

liable under respondeat superior. *Monell*, 436 U.S. at 692; *Waters v. City of Chicago*, 580 F.3d 575, 584 (7th Cir. 2009). *See also Board of County Commissioners v. Brown*, 520 U.S. 397, 404 (1997) (plaintiff under § 1983 must show that municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.) Aside from Officer Henderson's actions, which are blameless, there is no evidence that the City of Beloit or its police department did anything. Vince submits no facts identifying any policy or practice of the city or any evidence related to Beloit's training of its officers. The City of Beloit is entitled to summary judgment.

### B. Rock County

Vince's claims against defendant Rock County fails as well. Vince contends that Rock County's allegedly unconstitutional policies and customs caused his injuries, pointing at what he perceives to be inadequacies in defendant Rock County's booking procedures and in the Jail Manager program.

Assuming once again that Vince's confidential informant status put him at substantial risk of assault, the question is whether Rock County's policies could be considered "reasonable measures" to abate that risk and minimize the overall risk of assault. I say "minimize" because the constitution does not offer the incarcerated a no-assault guarantee, only that those who know will take reasonable measures to abate substantial risk of serious harm. *Cf. Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) ("Prisons, after all, are dangerous places often full of people who have demonstrated aggression."). Vince has submitted evidence that he was assaulted after the jailors, operating under SOP 6.150 and using the Jail Manager program's "enemies list" feature, placed Vince in a general population unit. It is undisputed that when Vince entered this

11

unit, other inmates chanted "beat him." It is reasonable to infer that Vince was attacked because of his informant status and that he would not have been attacked if he had been housed in segregation.

But this is not enough to establish a violation of Vince's Due Process rights by Rock County. Rock County can be liable only if using the booking system gave rise to a risk of harm in inmates that was so obvious that Rock County must have been aware of this risk, and by failing to act to reduce the risk, sanctioned the harmful conduct. *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 530 (7th Cir. 2000).

Although SOP 6.150 and Jail Manager did not explicitly consider a prisoner's "confidential informant" status, SOP 6.150 allowed jailors to isolate prisoners under special circumstances, and the Jail Manager program identified other inmates who were known risks to a prisoner so that jail personnel could address those risks. Indeed, in Vince's case, as a result of a risk identified by Jail Manager, the jailors reassigned Vince to an enemy-free unit. In a perfect world, the jailors later would have used their discretion under SOP 6.150 to move Vince to segregation once the chanting began, but their failure to do so does not establish that the *policy* sanctioned attacks on informants.[5] For Vince to prevail against the *county*, he would have to establish that it was so obvious to Rock County that its written policy and its computer program were not adequately protecting informants that the continued use of this system amounted to sanctioning attacks on informants. Vince has presented no such evidence. The only other example he provides is his own August 2005 assignment to segregation, which demonstrates that

---

[5] As already noted, perhaps Vince could have stated a claim against some of the individual jailors, but that's not how Vince chose to proceed and it's too late now.

the system was working as designed. Because Vince has failed to present evidence that Rock County's booking system and Jail Manager program amount to an unconstitutional policy, defendant Rock County is entitled to summary judgment.

CONCLUSION

Based on the facts in the record, it looks like the beating that Vince suffered at the Rock County Jail could have been avoided if someone would have moved Vince to segregation once the chanting began. But this was, at most, a fact-specific failure by on-duty jail staff. It cannot be attributed to any of the defendants Vince chose to name in this lawsuit.

ORDER

IT IS ORDERED that:

(1) The motions for summary judgment filed by defendants Rock County, Tom Niman, City of Beloit and Lorenzo Henderson, dkts. 40 and 45, are GRANTED.

(2) The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 9th day of December, 2009.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge